Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:  (949) 502-2870
Facsimile:   (949) 258-5081

*Attorneys for Plaintiff,*
Backgrid USA, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BACKGRID USA, INC., a California corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>AUDACY, INC., a Pennsylvania corporation; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. 2:21-cv-08874-JAK-KS<br><br>**JOINT REPORT RE JURISDICTIONAL DISCOVERY** |

Pursuant to this Court's order made at the September 26, 2022, hearing and the minute order issued on October 4, 2022, the Parties jointly submit this report as follows:

# I. BACKGRID USA, INC.'S PROPOSED TOPICS FOR JURISDICTIONAL DISCOVERY

    a.    Discovery concerning facts pertaining to alter ego and implied agency as between Audacy, Inc., Audacy Georgia, LLC, Audacy Arizona, LLC, Audacy Texas, LLC, Audacy New York, LLC, Audacy Missouri, LLC, Audacy California, LLC[1], including:

        i.  Commingling of funds and assets as between the entities;

        ii.  Whether the entities have been liable for debts of the other(s);

        iii.  The use of the California offices, including which radio stations and websites they support;

        iv.  How the California offices are used and by whom they are used;

        v.  The tasks performed by the people who work in the California offices;

        vi.  Representations made by the agents and employees who work out of the California offices about their agency;

        vii.  Communications by Audacy, Inc. concerning whether the LLCs' employees/agents are agents for Audacy, Inc.;

        viii.  Whether employees from one entity performs tasks for the other entities;

---

[1] Audacy Georgia, LLC, Audacy Arizona, LLC, Audacy Texas, LLC, Audacy New York, LLC, Audacy Missouri, LLC, Audacy California, LLC are collectively the LLCs.

    ix. Which entity or entities benefited from the exploitation of the Photos;

    x. Whether the LLCs function for the benefit of Audacy, Inc.;

    xi. Whether the entities are adequately capitalized;

    xii. Any compliance performed by any of the entities with respect to corporate formalities;

    xiii. The corporate records of each entity;

    xiv. The directors and officers of the entities from the past six years;

    xv. Which entity or entities profited monetarily from the exploitation of the Photos;

    xvi. Which entity or entity experienced additional web traffic from the exploitation of the Photos;

    xvii. Which entity or entity benefited from the data collected from the Photos, including the contests for which the Photos were used to promote, and which entity collected and used the data from those contests.

    xviii. Audacy, Inc.'s involvement in directing the other entities' content on their alleged properties, including on their social media sites.

    xix. Audacy Inc.'s copyright policies directed to the other entities, including policies for using the Photos;

    xx. Representations made by Audacy, Inc. concerning the reach of Audacy Inc.'s audience and the factual basis for the same.

      xxi. Discovery concerning how social media content producers who work for any or all of the entities work, who gives them direction, who pays them, what representations they make about their agency, who benefits from their work, and what role Audacy, Inc. or the other entities have with respect to those producers.

b. Discovery concerning who uploaded the Photos at issue, including:

    i. The employment status of that person;

    ii. Whether that person performed any task or tasks on behalf of Audacy or the other entities;

    iii. Representations concerning that person's agency;

    iv. The metadata of the Photos and the uploaded files, and information pertaining to the source of the files.

c. Discovery concerning who encouraged, directed, or ratified the uploading of the infringements at issue, including:

    i. The employment status of that person;

    ii. Whether that person performed any tasks or tasks on behalf of Audacy or the other entities;

    iii. Any policies or oversight provided by Audacy to that person;

    iv. Representations concerning that person's agency.

d. Discovery concerning which entity or entities received the benefit of the Photos at issue, including:

    i. Which entity or entities profited monetarily from the Photos;

    ii. Which entity or entity experienced additional web traffic from the Photos;

    iii. Which entity or entity benefited from the data collected as a result of the Photos, including the contests for which the Photos were used to promote, and which entity collected and used the data from those contests.

 e. Discovery concerning the factual representations made by Michael Dash in support of Audacy's motion to dismiss and its reply brief.

 f. Discovery concerning the factual basis for the information contained in each of the exhibits attached to the declaration of Joanna Ardalan in opposition to the motion to dismiss.

 g. Discovery concerning how social media content producers who work for any or all of the entities work, who gives them direction, who pays them, what representations they make about their agency, who benefits from their work, and what role Audacy, Inc. or the other entities have with respect to those producers.

 h. The circumstances in which Audacy, Inc. or the entities deleted or destroyed information relevant to the uploads of the Photos and what was deleted and destroyed.

 i. Communications between the Audacy, Inc. and the other entities concerning the Photos.

 j. Communications between the Audacy California LLC and the other entities concerning the Photos.

 k. Communications by or to Audacy, Inc. concerning the LLC's agents representing themselves as agents for Audacy, Inc.

    l. Web traffic of each the social media websites.

    m. Audacy's targeting of California residents through, *inter alia*, promotions, contests, mailing lists, advertisements.

    n. Audacy's targeting of California clients and potential advertisers.

    o. Audacy's internal communications about Backgrid or the Photos.

## II. AUDACY INC.'S PROPOSED TOPICS FOR JURISDICTIONAL DISCOVERY

    a. The person who created each of the posts at issue

    b. The physical location where that person is employed.

    c. That person's employer

    d. Documents sufficient to show the lack of employees of Audacy, Inc.

## III. THE PARTIES' POSITIONS ON WHY THEIR TOPICS ARE APPROPRIATE

    **a. Backgrid's Position On Why The Scope of Its Discovery Topics are Appropriate**

**Topics Relating to Alter Ego:** In its motion to dismiss, Audacy challenged Backgrid's ability to contend that Audacy California LLC should be considered the alter ego of Audacy. *See* Reply at 3 (Dkt. 27); Motion at 10 (Dkt. 21). Despite this, Audacy now seeks to limit jurisdictional discovery so that Backgrid does not have the opportunity to discover those facts despite Audacy's contention that Audacy is not responsible for the acts of the local station LLCs that it claims posted the works and that Audacy California was not involved. They also claim that Audacy has no employees, presumably to support the notion that Audacy could not be responsible for the acts of its California LLC or that its California LLC cannot be responsible

for the other LLCs, but that strongly suggests that alter ego is appropriate and further discovery should be done. Federal courts applying California law have found that an alter ego relationship existed where one of the entities has no employees of its own, but its functions were done by sister subsidiaries. *See, e.g., Swete v. Prof'l Bureau of Collections of Md.*, No. 2:09-CV-2099 FCD KJM, 2010 U.S. Dist. LEXIS 2843 at *2, *7-8 (E.D. Cal. Jan. 14, 2010) (finding that defendant PBM could be the alter ego of defendant PBC, shown by defendants concession that PBC had no employees and that PBM's employees told customers that they represented PBC, even though defendants showed that there was no contract between the two entities and that PBM did not service PBC's accounts during the relevant time period); *Decker v. Antovich*, No. 98-60056-MM, Chapter 7, Adversary No. 00-5453, 2006 Bankr. LEXIS 3698 at *3-4, *10 (Bankr. N.D. Cal. Dec. 28, 2006) (finding that alter ego relationship existed where one company "hired and paid all the employees that ran the two companies," while the other company provided the payroll funds but lacked any employees, even though the companies used separate bank accounts).

      Backgrid should be permitted discovery on the alter ego relationship between Audacy, Inc. and Audacy California LLC, but also the alter ego relationships between the other LLCs, which Audacy contends posted the photos. After all, assuming it is true that the other LLC posted them, the alter ego relationship between them and Audacy California and Audacy is relevant to whether the infringement occurred in California.

      Each of the topics listed by Backgrid relate to one or more of the alter ego factors:

- Sole ownership of all the stock in one entity by another entity or by an individual or his family members;
- Overlap in the employees or attorneys of the two entities;

- Disregard of legal formalities and the failure to maintain arm's length relationships among related entities;
- Use of one entity as a shield against personal liability, such as by contracting with the intent to avoid performance;
- Commingling of funds and other assets, such as a failure to segregate funds of the separate entities or the unauthorized diversion of corporate assets from one entity to another;
- Formation and use of one entity to transfer to it the existing liability of another entity;
- Manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another;
- Diversion of assets from one entity to a stockholder or other entity, to the detriment of creditors;
- Failure to obtain authority to issue stock;
- Holding out by one entity that it is personally liable for the debts of the other entity;
- Failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities;
- Overlap in directors of the two entities;
- Use by both entities of the same office or business location;
- Failure to adequately capitalize one entity, such as the total absence of corporate assets;
- Concealment or misrepresentation of the identity of the responsible ownership, management and financial interest;
- Use of the corporate entity to procure labor, services or merchandise for another entity.

*MGA Enter., Inc. v. Hartford Ins. Group,* 2012 WL 12894053, at *8 (C.D. Cal. 2012).

**Topics Relating to Implied Agency.** Agency relationships may be inferred or implied from the conduct of parties and circumstances surrounding the events. *Parrish v. National Football League Players Ass'n*, 534 F.Supp.2d 1081 (N.D. Cal. 2007) (*citing Michelson v. Hamada*, 29 Cal.App.4th 1566, 1579–80, 36 Cal.Rptr.2d 343 (1994)). "Under principles of agency by estoppel, 'when one assumes to act as an agent for another, he may not, when challenged for these acts, deny his agency ....'" *Id.*, *People v. Robertson,* 6 Cal.App. 514, 517, 92 P. 498 (1907). The topics included the alter ego/implied agency section include topics that relate to whether the acts of the California LLC were attributable to Audacy through the conduct of the parties.

**Topics Relating to Who Uploaded the Photos at Issue/Who Encouraged, Directed, or Ratified the Infringement**. It appears Audacy is agreeable to discovery on this topic. Backgrid should be permitted to conduct discovery on the representations Audacy and Audacy California LLC has made about this person and whether Audacy and Audacy California LLC benefits from this person's work. As Audacy has represented that it could not determine who uploaded each of the photos, the metadata might be a helpful indicator of how and when the photo was created and if it was re-saved on a different machine it may include other identifying information. Moreover, any person who encouraged, directed or ratified the infringement could be contributorily/vicariously liable, which is another basis for jurisdiction, depending on this person's agency.

**Topics concerning which entity or entities received the benefit of the Photos at issue.** While these topics relate to alter ego, they also address whether Audacy or Audacy California are vicariously liable for the infringement, which can be the basis for specific jurisdiction.

9

**JOINT REPORT RE JURISDICTIONAL DISCOVERY**

**Discovery concerning the factual representations made by Michael Dash in support of Audacy's motion to dismiss and its reply brief.** Mr. Dash submitted two declarations in support of Audacy's motion that made factual assertions that Backgrid should be permitted to explore.

**Discovery concerning the factual basis for the information contained in each of the exhibits attached to the declaration of Joanna Ardalan in opposition to the motion to dismiss.** Attached to Ms. Ardalan's declaration are exhibits showing that employees in California represent themselves as Audacy employees. They also show representations Audacy has made about the reach of its network and the value of its brands. Backgrid should be allowed discovery on these issues as Audacy now contests that its representations are correct.

**The circumstances in which Audacy, Inc. or the entities deleted or destroyed information relevant to the uploads of the Photos and what information was deleted and destroyed.**
At the hearing, Audacy contended that it could not determine who uploaded at least one of the photos because the photos were destroyed when it took the post down. Backgrid is entitled to conduct discovery on the circumstances of the destruction and what information was destroyed as it might have shed light on who uploaded the photo.

**Communications between the Audacy, Inc./Audacy California LLC and the other entities concerning the Photos.** Theses communications may go to alter ego, implied agency, estoppel, whether the Photos were used to target California residents.

**Audacy's targeting of California residents through, *inter alia*, promotions, contests, mailing lists, advertisements.** Backgrid is entitled to

10

JOINT REPORT RE JURISDICTIONAL DISCOVERY

discovery on the quantity and quality of contacts Audacy has with California, which would include its relationship and targeting of residents in California.

**Audacy's targeting of California clients and potential advertisers.**
Backgrid is entitled to discovery on the quantity and quality of contacts Audacy has with California, which would include its relationship and targeting of clients and advertisers in California.

**Audacy's internal communications about Backgrid or the Photos.**
Audacy contended it did not know that Backgrid was based in California, and therefore it did not target Backgrid, a company based in Redondo Beach, California. (Motion at 7, "Audacy was not put on notice that the copyright holder was located in California.") Backgrid is entitled to discovery on its pre-suit internal communications about Backgrid to determine the veracity of this contention. *See Lindora LLC v. Isagenix International LLC*, 198 F.Supp.3d 1127 (S.D. Cal. 2016)

b. **Audacy's Position On Why The Scope of Its Discovery Topics are Appropriate**

With the exception of Plaintiff's Proposed Topic (b)(i), none of the proposed topics are the "focused jurisdictional discovery" which this Court has ordered. This discovery should be rejected because it would not "demonstrate facts sufficient to constitute a basis for jurisdiction," *see Laub v. DOJ*, 342 F.3d 1080, 1093 (9th Cir. 2003). For the reasons outlined below, the discovery sought is not relevant to this issue or proportional to the needs of the case, *see* Fed. R. Civ. P. 26(b)(1), and should be rejected.

*First,* Plaintiff seeks discovery related to "facts pertaining to alter ego and implied agency." *See* Pl.'s Proposed Topics (a)(1) through (a)(xxi). Plaintiff's "alter ego" theory relates only to the question of general jurisdiction, *see* Pl.'s Opposition (Dkt. 26) ("Opp.") at 12-13. However, even if operations of other

11

JOINT REPORT RE JURISDICTIONAL DISCOVERY

entities could somehow be imputed to Audacy, Inc., it would remain true that the company is headquartered in Pennsylvania and incorporated there, facts which are undisputed. Because Audacy, Inc. is neither headquartered nor incorporated in California, it is not "essentially at home" here. *See Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014). This is true even if the activity of Audacy California were imputed to Audacy, as general jurisdiction does not lie over a company merely because it engages in "substantial, continuous and systematic" business in a state. *See id.* at 137-39. Nor is this a case involving "exceptional" circumstances, such as the relocation of a company's headquarters temporarily due to a war. *See BNSF Ry. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017).

Plaintiff's implied agency argument relates to its theory of specific jurisdiction. *See* Opp. at 7. Even if Audacy, Inc. had employees in California or if an agency relationship could be inferred or implied, none of those employees' actions would have any impact on a specific jurisdiction analysis unless they were actually involved in the allegedly infringing posts. *See Carpenter v. Sikorsky Aircraft Corp.*, 101 F. Supp. 3d 911, 921 (C.D. Cal. 2015) ("Specific personal jurisdiction requires a show of forum-related activities of the defendant that are related to the claim asserted."). The discovery proposed by Audacy will answer this question.

***Second***, Plaintiff seeks discovery "concerning who uploaded the Photos at issue." *See* Pl.'s Proposed Topics (b)(i) through (b)(iv). Audacy agrees that discovery into certain aspects of this issue is appropriate and has proposed its topics accordingly. But Plaintiff's proposal is too broad. Specifically, Topics (b)(ii) and (b)(iii) are alter ego/agency discovery which is irrelevant for the reasons discussed above. Topic (b)(iv) seeking the metadata and sourcing of the photograph is liability-related discovery and could not inform the jurisdictional analysis here.

***Third***, Plaintiff seeks to inquire "who encouraged, directed, or ratified the uploading of the infringements at issue." *See* Pl.'s Proposed Topics (c)(i) through (c)(iv). This again appears to be broad and irrelevant alter ego/agency discovery. To extent this discovery could be relevant, Audacy seeks to answer this question through identifying the location where each person who authored a post worked, as indicated in its proposal.

***Fourth***, Plaintiff requests information about "which entity or entities received the benefit of the Photos at issue." *See* Pl.'s Proposed Topics (d)(i) through (d)(iii). Plaintiff is already aware of the radio stations to which these social media accounts related, and it is unclear what possible relevance a purported "benefit" would have on the personal jurisdiction analysis. Moreover, Audacy would respectfully submit that no specific profit can be attributed to an individual social media post.

***Fifth and finally***, Plaintiff seeks a series of individual categories of discovery. *See* Pl.'s Proposed Topics (e) through (o). For Topic (e), concerning the Declaration of Michael Dash, any relevant discovery would be covered by the more specific categories proposed by Audacy. For Topic (f), concerning various exhibits attached to a declaration by Plaintiff's counsel, Audacy, of course, has no knowledge how those exhibits were prepared. To the extent Plaintiff intends to ask questions about various persons identifying "Audacy, Inc." as their employer on LinkedIn, that would also be agency/alter ego discovery which, again, would not actually inform the outcome here. Similarly, discovery concerning social media content producers in general, perTopic (g), is irrelevant; what is at issue is the specific persons who created the allegedly infringing posts in this case. Topic (h) is also irrelevant at this point. As Audacy has explained, one of the posts at issue was taken down following receipt of a cease and desist letter, *see* Suppl. Decl. of Michael Dash (Dkt. 28) ¶

3 n.1, but there is no suggestion that the post on an Atlanta stations' Instagram account would have otherwise indicated the involvement of California personnel. Topics (i), (j), and (k) are also alter ego/agency topics. Topic (l) seeking information about web traffic to social media sites has no possible relevance to any jurisdictional issue. The number of hits each post received would not demonstrate any connection to California. Topics (m) and (n) seeks Audacy's California outreach more broadly, but, again, that is irrelevant to either a general or specific jurisdiction analysis without any evidence that the posts were targeted to California, and Plaintiff points to none. Finally, Topic (o) seeks Audacy's communications about Backgrid or the Photos, a very broad category that clearly goes to the substance of their claims. Moreover, in their opposition to the motion to dismiss, Plaintiff relied only on their agency's demand letter, not any sort of internal communications, and this is therefore a pure fishing expedition.

If it were required to produce discovery in response to all of these topics, Audacy believes it would require at least 90 days, perhaps longer given the upcoming holiday season.

Audacy believes its proposed topics are narrowly tailored to address the actual issues at stake here – whether the persons who created these posts were engaged in forum-related activities. Audacy believes it could complete the discovery it proposes within 21 days, likely less than that amount of time, unless there were additional discovery disputes.

## IV. WHETHER ANY PROPOSED JURISDICTIONAL DISCOVERY IS RELEVANT TO THE CLAIMS

### a. Backgrid's Position

While Backgrid's discovery is intended to target only the jurisdictional issue, it is possible that discovery would reveal other theories of infringement, such as vicarious and contributory infringement against Audacy.

### b. Audacy's Position

With respect to the Court's question about relevance to the substantive claims, Audacy would respectfully submit that none of the alter ego/agency questions are directly relevant to the substance of this case. Among other things, Plaintiff could resolve the question of corporate responsibility by simply suing the correct entities, each of which is also subject to jurisdiction in Pennsylvania. Audacy would agree that certain topics related to the creation of the posts at issue and benefits received could be relevant, but would respectfully submit that any such discovery should be held in abeyance until such time as Plaintiff actually chooses to file a new action in a proper jurisdiction. Moreover, as a Court in this Circuit recently recognized, "[i]f the Court does not have personal jurisdiction over Defendant, then requiring Defendant to engage in discovery . . . would be prejudicial." *Long v. Gamo Outdoor S.L.U.*, 2022 U.S. Dist. LEXIS 127598, at *6-7 (D. Nev. July 18, 2022). This is particularly true because, like in Long, Plaintiff has served a large volume of proposed topics.

Dated: October 5, 2022                                  **ONE LLP**

By: /s/ Joanna Ardalan
　　　Joanna Ardalan
　　　Peter R. Afrasiabi

　　　*Attorneys for Plaintiff,*
　　　Backgrid USA, Inc.

Dated: October 5, 2022         **Ballard Spahr LLP**

By: /s/ Thomas Sullivan
        Thomas Sullivan

*Attorneys for Defendant,*
Audacy, Inc.