Elizabeth L. Schilken (SBN 241231)
  *SchilkenE@ballardspahr.com*
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Tel.: 424.204.4400; Fax: 424.204.4350

Thomas B. Sullivan (admitted *pro hac vice*)
  *SullivanT@ballardspahr.com*
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York , NY 10019-5820
Tel.: 212.223.0200; Fax: 212.223.1942

Attorneys for Defendant
AUDACY, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| BACKGRID USA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>AUDACY, INC., a Pennsylvania corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-08874-JAK-KS<br><br>**AUDACY, INC.'S RESPONSE TO BACKGRID USA, INC.'S SUPPLEMENTAL BRIEF ON JURISDICTIONAL DISCOVERY (DKT. #39)** |

Following the jurisdictional discovery ordered by this Court, Plaintiff Backgrid USA, Inc. ("Backgrid") has still failed to meet its burden to demonstrate, as it must, that its claim arises out of forum-related activities by Defendant Audacy, Inc. ("Audacy"). Further, Backgrid fails to show that additional jurisdictional discovery is warranted. For these reasons, Audacy's Motion to Dismiss should be granted. (Dkt. #20).

As laid out in Audacy's opening brief, there is no general jurisdiction in California over the company. Br. in Supp. of Mot. to Dismiss ("MTD") at 5-7 (Dkt. #21). Therefore, the only possible ground for proceeding in this Court is specific jurisdiction. To establish specific jurisdiction, Backgrid bears the burden of demonstrating that Audacy (1) "purposefully directed" its activities at California and (2) that Backgrid's claims arose out of those activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800, 802 (9th Cir. 2004). Even following discovery, Backgrid cannot meet its burden with respect to either prong, let alone both.

## I. PLAINTIFF FAILED TO CARRY ITS BURDEN TO DEMONSTRATE AUDACY, INC. MADE THE SOCIAL MEDIA POSTS IN EXHIBIT B TO THE COMPLAINT

Audacy has produced uncontroverted evidence that the individuals who posted the photos were employees of separate LLCs, and not employees of the separate company "Audacy, Inc.", and that therefore Audacy has no activity related to these posts whatsoever, let alone activities in this forum. Suppl. Decl. of Michael Dash in Supp. of Mot. to Dismiss ¶¶ 2-5, (Dkt. #28); Decl. of Joanna Ardalan ("Ardalan Decl.") in Supp. of Suppl. Br. on Jurisdiction (the "Suppl. Br.") Ex. A (Dec. 8, 2022 Dep. of Keelin Austin at 23:4-25; 32:1-55:23) (Dkt. #39-4); *id.* Ex. C (chart detailing employer locations).

Backgrid argues that one of Audacy's two Rule 30(b)(6) witnesses, senior corporate counsel Keelin Austin, did not competently testify as to the employers

of the individuals who created the posts at issue. Backgrid argues that Ms. Austin simply "looked at a chart that was prepared by someone else in the legal department, which represented the Posting Individuals are employees of one of the Local LLCs," and that "[s]he does not know where the information about who purportedly uploaded the photographs came from and made no effort to verify that information." Suppl. Br. at 3:19-22, 27-28. Backgrid is wrong in its position. As Ms. Austin testified, the information was obtained by corporate counsel Kristel Tupja from the social media team or the brand manager for each of the stations. Ardalan Decl. Ex. A (Austin Dep. at 27:24-28:9; 30:6-13). Backgrid's complaint that Ms. Austin did not personally verify this information is unavailing, because Rule 30(b)(6) witnesses are entitled to reasonably rely on review of documents and conversations with other corporate employees to educate themselves on subjects of their testimony. *See Local Initiative Health Auth. for L.A. Cty. v. OneBeacon Prof'l Ins., Inc.*, 2017 U.S. Dist. LEXIS 160557, at *9-10 (C.D. Cal. July 7, 2017) ("personal knowledge of the designated subject matter by the selected [Rule 30(b)(6)] deponent is of no consequence") (citation omitted).

Backgrid also devotes much attention in its Supplemental Brief to arguing that Audacy was required to establish that the employees employed by the separate LLCs were, in fact, not under its control. However, Backgrid's Deposition Notice never requested a witness be designated to testify regarding the "right to control" factors identified in the Supplemental Brief at 2:18-3:4, and further Backgrid never questioned Ms. Austin regarding those factors. It is of course Backgrid's burden to prove that jurisdiction is appropriate, not Audacy's duty to prove that it is not. *See Schwarzenegger*, 374 F.3d at 800.[1]

---

[1] At one point in its Supplemental Brief, Backgrid claims that "[i]t is clear that . . . Audacy, Inc. has control over the Posting Individuals," Suppl. Br. at 5:5-7, citing testimony from Audacy's other Rule 30(b)(6) witness, Jessica Levy. The

2
**AUDACY'S RESPONSE TO BACKGRID'S SUPPLEMENTAL BRIEF ON JURISDICTIONAL DISCOVERY**

## II. PLAINTIFF HAS NOT CARRIED ITS BURDEN TO DEMONSTRATE THAT THE SOCIAL MEDIA POSTS IN EXHIBIT B TO THE COMPLAINT WERE PURPOSEFULLY DIRECTED AT CALIFORNIA

Even if, counterfactually, the posters were Audacy employees, Backgrid still cannot meet its burden to show that its claims arise out of activities directed at this forum. Backgrid does not cite a single item of evidence showing the posts in Exhibit B to the Complaint were purposefully directed at California, except to argue that a "significant portion" of the Instagram followers of the Connecticut, Georgia, St. Louis and Phoenix stations are from Southern California. Suppl. Br. at 11:15-17. However, the follower data produced by Audacy shows this argument is not accurate.

The data produced in discovery shows that there are approximately 214,000 followers of the Instagram account for V103 (Atlanta); 25,000 Instagram followers for Hot 93.7 (Hartford); 29,000 Instagram followers for Live 101.5 (Phoenix); and 49,000 Instagram followers for Hot 104.1 (St. Louis).[2] Decl. of Thomas B. Sullivan ("Sullivan Decl.") ¶ 2, Ex. 1; Ardalan Decl. Ex. B (Dep. of Jessica Levy at 36:7-37:21). Of those, the number of followers between 2018 and the present who provided location information self-reporting that they reside in California numbered 857, 88, 172, and 136, respectively; or 0.4%, 0.3%, 0.6%,

---

deposition excerpt cited demonstrates nothing of the kind. Ms. Levy was in fact asked whether Audacy, Inc. had directed the use of the phrase "online via Audacy.com" in one of the posts stating that a radio show was available. Ms. Levy testified that she was not aware of any such direction. *See* Ardalan Decl. Ex. B at 56:3-11. The witness went on to testify that the accounts at issue sometimes direct people to Audacy.com, *id.* at 57:13-19, but that does nothing to establish that Audacy, Inc. "controls" the people who posted the photos.

[2] Audacy has learned that the Hot 104.1 Instagram post was made by the station before it became an Audacy station; thus, no Audacy-branded entity of any kind had anything to do with this post. Ardalan Decl. Ex. C.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

and 0.2%. Ardalan Decl. Ex. K. The same location data shows that the overwhelming majority of followers for each of these Instagram accounts are within the station's home state. Simply maintaining a social media account with a miniscule number of followers who self-reported that they reside in the forum does not establish "express aiming" to support specific jurisdiction. Indeed, Backgrid has made the very same failed argument in this District previously. *See Backgrid United States v. Modern Notoriety*, 2021 U.S. Dist. LEXIS 199388, at *15-16 (C.D. Cal. Sept. 15, 2021) ("the fact that Defendant[]'s Website and social media accounts have some Southern California consumers and followers is insufficient to show that Defendant . . . expressly aimed his intentional acts at the Southern California market").

As Audacy stated in response to Plaintiff's Requests for Production, it is not able to provide the number of Twitter followers who are California residents because Twitter does not provide Audacy with location data. Ardalan Decl. Ex. H (Dkt. #39-8) at Resp. to Request No. 2. Backgrid did not attempt to question Audacy's corporate designee on this topic. Nor did it seek any information from Twitter itself through third-party discovery, and it does not request permission in its Brief to do so in the future. Backgrid cites no support for its suggestion that the Court should draw an adverse "inference" from the absence of data that has never been in Audacy's possession or control. *See* Suppl. Br. at 11:17-18.

Backgrid also raises Audacy's inability to access "traffic information that would indicate how many people visited each of the infringing posts on Instagram." Suppl. Br. at 10:1-5. Audacy can no longer access the posts at issue because it took them down as soon as Backgrid objected to them. Backgrid argues this justifies drawing another (unspecified) adverse inference in its favor, but overall viewership says nothing about personal jurisdiction. Instagram does not provide location data with respect to people who view specific posts. Ardalan Decl., Ex. B at 46:22-47:16. Nor is there any reason to believe, given

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

4
**AUDACY'S RESPONSE TO BACKGRID'S SUPPLEMENTAL BRIEF ON JURISDICTIONAL DISCOVERY**

the miniscule number of followers each account had in California as discussed above, that this information would be helpful to Backgrid even if it existed.

### III. BACKGRID'S ADDITIONAL ARGUMENTS ARE NOT RELEVANT TO PERSONAL JURISDICTION

#### A. Plaintiff's claim that Audacy, Inc. could be liable for contributory or vicarious infringement, or liable for direct infringement under an agency theory, is a red herring

Backgrid argues that "[T]he people who posted the infringing posts are … Audacy's agents and engaging in infringement on its behalf," Suppl. Br. at 2:22-23, but it fails to cite any evidence supporting this completely speculative statement. In fact, the Court specifically ordered that Backgrid was not permitted to conduct discovery on any theory of "implied agency" and there was no discovery conducted on this issue. Nov. 9, 2022 Order ("Nov. Order") at 1 (Dkt. #36). Backgrid also claims that "[a]ssuming the Local LLCs are separate entities and posted the works, Audacy would be liable for vicarious infringement … and for contributory infringement." Suppl. Br. at 2:24-26. However, Backgrid fails to cite any evidence supporting the notion that Audacy had the right and ability to supervise the allegedly infringing posts, or that Audacy had knowledge of the infringing posts and materially contributed to them. *Id.* Even if Backgrid could somehow provide evidence to support its theories of agency and secondary liability, it would be irrelevant because Backgrid has made <u>no showing</u> that the social media posts targeted California in the first place, regardless of which entity made them. Further, these claims are not pleaded in the Complaint and the Court cannot evaluate personal jurisdiction based on unpleaded theories of liability.

#### B. Information regarding the residential locations of the Posting Individuals is beyond the scope of discovery and irrelevant.

Backgrid also argues that Audacy's corporate designee should have known

5
**AUDACY'S RESPONSE TO BACKGRID'S SUPPLEMENTAL BRIEF ON JURISDICTIONAL DISCOVERY**

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

the home residence location of the individuals who made the posts at issue (as opposed to the location of their place of employment). Suppl. Br. at 4:2-3; 6:4-17. However, the Court ordered discovery on the "physical location where" the poster "is employed," Nov. Order at 1, information which Audacy provided. It is unclear why their states of residence are relevant, unless Backgrid intends to suggest that one or more of the posters – despite working for radio stations in Connecticut, New York, Georgia, Missouri, Arizona and Texas – in fact lived in California and made the posts from that location. Notably, there is absolutely no information in the record to support this.

### C. Backgrid's various complaints about Audacy's objections to other irrelevant requests do not create jurisdiction.

Backgrid also raises various purported issues with Audacy's objections to its discovery requests or the purported failure of Audacy's witness to testify as to certain topics. Suppl. Br. at 7:22-11:12. As Audacy explained to Backgrid, these requests went beyond the scope of permitted discovery here, which was focused on the specific posts at issue. *See* Nov. Order at 1.

*First*, Backgrid sought extensive information about promotions, contests, mailing lists, advertisements, and sponsored posts. Audacy explained that none of the posts at issue were sponsored posts and that it was unaware of any payment made in exchange for any of these posts. *See* Ardalan Decl. Ex. H at 5. There is only one contest featured on any of the posts in Exhibit B to the Complaint: The Instagram account for Hot 93.7 in Hartford, Connecticut, invited followers to "win $1,000 every hour by texting the word of the hour to 72881! MAKE SURE TO TUNE IN FOR THE WORD AT 10…." Compl. Ex. B at PageID #88 (Dkt. 11-3). The post demonstrates on its face that the contest involves listeners "tuning in" to the station to hear the word of the hour, and then

texting a number to win money. It has nothing to do with California residents.[3] Audacy provided the necessary information related to "whether the *posts* were purposefully directed at California," Nov. Order at 1 (emphasis added), as required by this Court's order.

Backgrid sought information that was far broader. For example, it sought every agreement Audacy has executed "relate[d] to advertising" in the past four years. Ardalan Decl. Ex. H at 8. Similarly, it asked for all representations "made to advertisers or potential advertisers that reflect audience reach and that bears the name Audacy," again over a four year period. *Id.* On contests, Backgrid sought information regarding "each contest, promotion, and/or giveaway" published by Audacy since January 1, 2018, *see id.* at 12, and individual submissions containing personal "contact information" for any person located in California for each of those contests, promotions, and giveaways, *see id.* at 13. None of this has anything to do with whether the posts were targeted at California.

Nor does Backgrid seriously argue to the contrary. In fact, it simply posits that a single unrelated promotion – appearing on Audacy, Inc.'s website – with a California based company and, apparently, the display of an advertisement with the word "California" in its name on the same website is "sufficient to support a finding that jurisdiction is proper." Suppl. Br. at 9:21-25. This is not the law. *Stohl v. Magic Mt., LLC*, 2019 U.S. Dist. LEXIS 21118, at *14 (E.D. Cal. Feb. 6, 2019) (even if plaintiff could demonstrate that defendant purposefully availed itself of the Eastern District of California through advertising, "it is clear Plaintiff's claims do not arise out of or result from Defendant's forum-related activities."); *Spacey v. Burgar*, 207 F.Supp.2d 1037, 1044 (C.D. Cal. 2001)

---

[3] Backgrid argues that Audacy's corporate designee should have had additional information regarding the Hot 93.7 contest, Suppl. Br. at 8:23-26, but, for the reasons discussed above, it was self-explanatory.

7
**AUDACY'S RESPONSE TO BACKGRID'S SUPPLEMENTAL BRIEF ON JURISDICTIONAL DISCOVERY**

1 (defendant's website not purposefully directed at California despite presence of
2 two banner advertisements for Southern California websites).

3     *Second*, Backgrid raises various requests related to an Audacy smart
4 phone application. *See id.* at 10:10-23. Backgrid does not even attempt to
5 explain how this application fits within the discovery ordered by the Court. It
6 clearly does not. As Audacy's witness explained, "you can follow the station for
7 listening purposes on the app, but you can't follow their social media through the
8 app" and "social media's separate and apart from the app." Sullivan Decl. ¶ 3 &
9 Ex. 2 at 23:7-17.

10     *Third*, Backgrid faults Audacy for failing to produce individual contact
11 information for various mailing lists. *See* Suppl. Br. at 10:27-11:20. Again,
12 none of these lists are relevant to the social media accounts or posts at issue in
13 this case, as noted specifically by the requests themselves. For example,
14 Backgrid sought "the personal information collected from https://www.audacy.
15 com/newsletter /subscribe," Ardalan Decl. Ex. H at 9, email messages sent to the
16 same list, *id.* at 10, "personal information collected from through
17 https://www.audacy.com /about," *id.* at 10-11, and personal contact information
18 for California enrollees in contests, *id.* at 13. Backgrid argues only that this
19 information "undermin[es] Audacy's contention that it keeps local markets local"
20 and instead "cross-promote[s]" them. Suppl. Br. at 11:9-12. Even if this is true,
21 it says nothing about personal jurisdiction in the present case.

22     **D. Backgrid other arguments fare no better**

23     Finally, Backgrid raises three other issues in its brief that deserve
24 comment. *First*, Backgrid repeatedly contends that it is unknown which station
25 was using a photograph of Matthew McConaughey, and that this was posted as
26 an "asset for other stations to use." Suppl. Br. at 4:21-5:2, 7:15-21, 10:3-5. The
27 rank speculation that an "unknown" station might have been a California-based
28 station is not a basis on which to find jurisdiction. More importantly, even if it

8
**AUDACY'S RESPONSE TO BACKGRID'S SUPPLEMENTAL BRIEF ON JURISDICTIONAL DISCOVERY**

1 were, the station is not "unknown"; Audacy established that the photograph was
2 not posted by a California-based station.  Ms. Austin testified that based on the
3 web browser URL, it was posted on the site for KYKY FM, a St. Louis station.
4 Ardalan Decl. Ex. A at 65:24-66:9.  Audacy also provided a chart stating the
5 same. *Id.* Ex. C at 1.  There is no evidence in the record whatsoever that this
6 photograph was used by other stations.  Further, Ms. Levy testified generally that
7 photographs could be sourced from the website, but disclaimed any knowledge
8 about where the specific photographs at issue were sourced.  *Id.* Ex. B at 69:19-
9 70:10.  Notably, Backgrid sought no discovery on that issue.

10     ***Second***, Backgrid contends that Audacy "testified that the followers for its
11 social media accounts are largely based in Los Angeles and New York."  Suppl.
12 Br. at 11:18-20.  The fact that Ms. Levy testified that an imprecise "good
13 portion" of followers of *Audacy, Inc.'s* social media accounts (e.g.,
14 twitter.com/audacy) are from New York and Los Angeles has no relevance to
15 whether *these at-issue posts* on social media accounts *of local LLCs* were
16 expressly aimed at California.

17     ***Third***, in an attempt to argue that Audacy, Inc. *does* have employees,
18 Backgrid claims the fact that Ms. Austin "reports to Michael Dash, who reports
19 to Andrew Sutor, who reports to the President and CEO of Audacy, Inc." shows
20 "that Audacy, Inc. has control over Ms. Austin's employment[.]"  Suppl. Br. at
21 5:19-21.  Thus, Ms. Austin must be an Audacy employee, and this "seriously
22 undermines her unsupported testimony that the Posting Individuals are not
23 employees of Audacy, Inc." *Id.* at 5:24-6:3.  This tenuous chain of inferences
24 does not even approach the showing that would be necessary to carry Backgrid's
25 burden on whether Audacy, Inc. made the posts at issue.  Further, Backgrid
26 claims that Ms. Levy "verified" in her deposition that she worked for Audacy,
27 Inc. *Id.* at 5:27-28.  However, Backgrid neglects to mention that later in the
28 deposition, Ms. Levy corrected her testimony and stated she works for Audacy

9
**AUDACY'S RESPONSE TO BACKGRID'S SUPPLEMENTAL BRIEF ON JURISDICTIONAL DISCOVERY**

Services. Sullivan Decl. ¶ 3 & Ex. 2 (Levy Dep. at 80:10-18).

## CONCLUSION

Following discovery, Backgrid has still not met its burden of demonstrating that personal jurisdiction may be asserted here, and none of the documents or deposition testimony that it requests in the Brief would change that outcome. For the reasons stated above and in its earlier brief, Audacy respectfully requests that the Court grant its motion.

DATED: January 9, 2023  BALLARD SPAHR LLP

By: /s/ *Thomas B. Sullivan*
THOMAS B. SULLIVAN (*pro hac vice*)
ELIZABETH L. SCHILKEN
Attorneys for Defendant
AUDACY, INC.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400