UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

| Proceedings: | (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND/OR IMPROPER VENUE PER F.R.C.P. 12(B)(2)-(3) (DKT. 20); AND JURISDICTIONAL DISCOVERY (DKT. 36) JS-6 |
|---|---|

**I.      Introduction**

On November 10, 2021, Backgrid USA, Inc. ("Backgrid" or "Plaintiff") brought this action against Audacy, Inc. ("Audacy" or "Defendant"). Dkt. 1. The Complaint advances a cause of action for copyright infringement. *Id.* On February 22, 2022, Defendant filed a motion to dismiss the complaint for lack of jurisdiction and for improper venue (the "Motion"). Dkts. 20, 21. On April 8, 2022, Plaintiff filed an opposition to the Motion (the "Opposition"). Dkt. 26. On April 29, 2022, Defendant filed a reply in support of its Motion (the "Reply"). Dkt. 27.

A hearing on the Motion was held on September 22, 2022 and the matter was taken under submission. Dkt. 33. On November 9, 2022, an Order issued that permitted the parties to proceed with certain limited jurisdictional discovery ("Discovery Order"). Dkt. 33. On December 30, 2022, Plaintiff filed a Supplemental Brief on Jurisdictional Discovery ("Plaintiff's Supplemental Brief"). Dkt. 39. The Supplemental Brief asserts that jurisdiction is proper and, in the alternative, requests additional discovery "on all of the topics Audacy refused to produce information on." *Id.* at 12. On January 9, 2023, Defendant filed a response to Plaintiff's Supplemental Brief ("Supplemental Response"). Dkt. 40. For the reasons stated in this Order, Plaintiff's request for additional jurisdictional discovery is denied, and the Motion is **GRANTED**.

**II.     Background**

     A.      Parties

It is alleged that Plaintiff "owns and operates one of Hollywood's largest celebrity-photograph agencies." Complaint ¶ 6. It is alleged that Plaintiff is incorporated in California, with its principal place of business in Redondo Beach, California. *Id.* ¶ 3. It is alleged that Defendant is a corporation incorporated in Pennsylvania, with its principal place of business there. *Id.* ¶ 4 It is alleged that Defendant is a publicly traded company that creates audio content, which it provides to consumers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

through its application, website, and over 230 radio stations across 47 markets. *Id.* ¶ 9. It is alleged that Defendant owns and operates websites and social media accounts used to promote its radio stations. *Id.* ¶ 9.

      B.      Substantive Allegations

It is alleged that Plaintiff owns the rights to various photographs of celebrities. Complaint ¶ 7. It is alleged that Plaintiff filed for copyright registration of those photographs within 90 days of their first publication. *Id.* ¶ 7-8. It is alleged that Defendant willfully infringed Plaintiff's copyrights to at least 21 photographs by posting them on its social media accounts and websites. *Id.* ¶ 10-12. It is alleged that Defendant first posted five infringing photographs, after which Plaintiff sent a notice to Defendant through a demand letter stating that the posts infringed its copyrights. *Id.* ¶ 10. It is alleged that after receiving the demand letter, Defendant then infringed an additional 14 photographs. *Id.*

The allegedly infringing posts appeared on the social media accounts and websites of radio stations located in Georgia, Connecticut, Arizona, Texas, New York and Missouri. *See* Dkt. 11, Ex. B[1]; Dkt. 22, Dash Decl. ¶ 8.

      C.      Procedural Background

A hearing on the Motion was held on September 22, 2022. At the hearing, the Court stated its tentative views that it was inclined to permit jurisdictional discovery and defer a ruling on the Motion pending the completion of jurisdictional discovery. Dkt. 33. Counsel were directed to file a joint report regarding their positions on the focused jurisdictional discovery that should proceed. *Id.*

On October 5, 2022, the parties filed a Joint Report Re Jurisdictional Discovery (the "Joint Report"). Dkt. 34. On November 9, 2022, the Discovery Order directed the parties to proceed with limited jurisdictional discovery. Dkt. 36 at 1. The Discovery Order stated that the purpose and scope of the discovery was "limited to seeking to determine the following: (1) what person(s) were involved in making and uploading the posts at issue; and (2) whether the posts were purposefully directed at California." *Id.* The Discovery Order also stated that the present jurisdictional discovery would not include issues as to alter ego or implied agency. *Id.* The Discovery Order stated that this "scope of discovery is consistent with the following topics stated in the Report by Plaintiff and Defendant respectively:"

> l. Web traffic of each of the social media websites.
> m. Audacy's targeting of California residents through, inter alia, promotions, contests, mailing lists, advertisements.
> n. Audacy's targeting of California clients and potential advertisers
>
> [proposed by Plaintiff]

---

[1] On November 16, 2021, Plaintiff filed a Notice of Errata Re Docket 1 (the "Notice of Errata"), which stated that the Complaint was inadvertently filed without exhibits. Dkt. 11. Attached to the Notice of Errata is a copy of the Complaint with the exhibits. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

      a. The person who created each of the posts at issue
      b. The physical location where that person is employed.
      c. That person's employer
      d. Documents sufficient to show the lack of employees of Audacy, Inc.

      [proposed by Defendant]

*Id.*

The Discovery Order further stated that if, based on the outcome of the initial discovery, Plaintiff should contend that any additional jurisdictional discovery is necessary, Plaintiff's supplemental brief should describe the proposed discovery with particularity, and provide a time estimate for completing it. *Id.* at 2. Additionally, the Order stated that, upon the filing of the parties' supplemental briefing regarding the results of jurisdictional discovery, if Plaintiff had proposed any further jurisdictional discovery, a determination would be made as to whether it will be permitted. *Id.*

As noted, Plaintiff filed its Supplemental Brief on December 30, 2022, and Defendant filed its Supplemental Response on January 9, 2023. Dkts. 39, 40. Plaintiff's Supplemental Brief contends that the current record is sufficient to support the exercise of personal jurisdiction, but in the alternative, it requests "additional discovery on all of the topics Audacy refused to produce information on, as shown in its objections to Backgrid's requests for production of documents." Dkt. 39 at 11.

**III.**     <u>Analysis</u>

      A.     Personal Jurisdiction

          1.     <u>Legal Standards</u>

A party may move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The party asserting the existence of jurisdiction bears the burden of establishing it. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). If the court does not require an evidentiary hearing, a plaintiff need make only a prima facie showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Boschetto*, 539 F.3d at 1015. However, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

To establish personal jurisdiction over a defendant, a plaintiff must show that both the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction is consistent with federal due process requirements. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006). California's long-arm statute is co-extensive with the scope of what is permitted by due process. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

Constitutional due process requires that jurisdiction be exercised over a nonresident party only if that party has "minimum contacts" with the forum state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

    2.    Application

        a)    General Jurisdiction

        (1)    Legal Standards

Depending on the nature and extent of a defendant's contacts, if any, with a forum state, there may be general or specific personal jurisdiction. If there is a basis for general jurisdiction, a party is subject to being required to appear and respond to any claims brought by a party in that forum. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Thus, if general jurisdiction is established, a party may be "haled into court in the forum state to answer for any of its activities anywhere in the world," and its contacts with the forum state need not relate to the claim asserted. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Schwarzenegger*, 374 F.3d at 801); *see also Burnham v. Superior Court of Cal.*, 495 U.S. 604, 617-19 (1990).

General jurisdiction exists only when a party's contacts with the forum state are "substantial or continuous and systematic" so as to "approximate physical presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). With respect to corporate defendants, contacts with the forum state must render a corporation "essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. Corporations are "at home" where they are incorporated, or where they have their "principal place[s] of business." *Id.* at 924; *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014). Additionally, in an "exceptional case," it is possible that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19.

        (2)    Application

            (a)    General Jurisdiction Based on Audacy's Own Contacts

Audacy argues that there is no basis for general jurisdiction because it is not incorporated in California, does not have its principal place of business here, and lacks sufficient contacts with California to establish general jurisdiction as an "exceptional case." In support of this contention, it asserts that it has no offices in Los Angeles; only its indirect subsidiary, Audacy California, has offices here. Dash Decl. ¶ 5. It argues that these California offices "support Audacy California's radio stations in the state." *Id.*

Plaintiff responds that the employees who work at Audacy's Los Angeles office should be considered employees of Audacy, Inc., not of Audacy California LLC. In support of this contention, Plaintiff provides screenshots of LinkedIn profiles in which employees working at the Los Angeles office identify

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

themselves as employees of "Audacy, Inc." *See* Ardalan Decl., Ex. B. Several of these posts identify these employees as holding national positions, or positions in regions that include California and other locations. Opp. at 7. One employee's profile states that she works in Los Angeles for the "West & Mid West Region of Audacy, Inc." *Id.*; Ardalan Decl., Ex. B. Another employee's profile identifies her as a "Director – National Partnerships at Audacy, Inc." based in Los Angeles. Ardalan Decl., Ex. B.

Plaintiff also provides evidence of job postings Defendant made for positions at "Audacy, Inc." that are based in the Los Angeles office. Opp. at 7-8; Ardalan Decl. Ex. B. Additionally, Plaintiff identifies job postings in which Audacy advertises that the potential candidate could choose to work in either Los Angeles or other Audacy offices. Ardalan Decl., Ex. F. In one such posting, the candidate was required to "mak[e] content changes based on what's happening across our org (marketing, and editorial across news, sports, music, podcasts, events and Exclusive Stations)". *Id.* Based on this evidence, Plaintiff contends that the Los Angeles office supports Audacy as a whole, not just Audacy California. Based on the contention that the Los Angeles office supports Audacy, Inc. in addition to Audacy California, Plaintiff argues that, in conducting the general jurisdiction analysis, the activities of the Los Angeles office should be considered activities of Audacy. Defendant replies that Audacy itself had no employees at all at the time the posts were made; rather, all employees within the corporate structure would have been employees of a state LLC or of Audacy Operations, Inc. Reply at 7; Dash Supp. Decl. ¶ 5.

Even assuming, *arguendo*, that the activities of the Los Angeles office should be considered part of Audacy's operations, Plaintiff has failed to make a showing that such operations are so substantial as to make Audacy "at home" in California. *See Daimler*, 571 U.S. at 139 n.19. Because Defendant is not incorporated in California and does not have its principal place of business here, it may only be subject to general jurisdiction if this is an "exceptional case" under *Daimler*. To determine whether a corporation's activities in a forum constitute an "exceptional case" warranting general jurisdiction, courts engage in "an appraisal of a corporation's activities in their entirety." *BNSF Ry. Co. v. Tyrrell,* 581 U.S. 402, 414 (2017) (quoting *Daimler*, 571 U.S. at 140). An example of such an exceptional case is *Perkins v. Benguet Consol. Mining Co.*, where the corporation temporarily relocated the center of its activities from the Philippines to Ohio during wartime, and the Supreme Court found general jurisdiction over the corporation in Ohio. 342 U.S. 437, 447-49. By contrast, in *BNSF*, the Court found that a company's contacts in Montana were insufficient for general jurisdiction when the company had 2000 employees in Montana, which was 5% of its workforce, and had 6% of its total track mileage in Montana. 342 U.S. at 406.

Plaintiff argues that, because the Los Angeles office has a comparable number of employees (152 employees "who identify 'Audacy, Inc.' as their employer and are located in Los Angeles") to the Philadelphia office (206 employees who "list Audacy, Inc. as their employer and who are located in Philadelphia"), the Los Angeles presence is "significant and competitive to the Philadelphia presence," where Audacy's principal place of business is located. Dkt. 26 at 7, 17.[2]

That the Los Angeles office -- assuming that it could be considered to be a part of Audacy Inc. -- has a comparable number of employees to Audacy's principal place of business is insufficient to show that this constitutes an "exceptional case" with respect to general jurisdiction. Plaintiff does not allege or

---

[2] Michael Dash declares in a supplemental declaration ("Supplemental Dash Declaration") that "Audacy has no employees and did not have any employees during the relevant time periods described in the Complaint." Dkt. 28, Supp. Dash Decl. ¶ 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | | Date | August 25, 2023 |
|---|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | | |

present facts that provide a meaningful context for this presence within all of Audacy's operations. Nor does Plaintiff present facts about Audacy's presence in California other than the number of employees it has working in the state. "[T]he general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. . . . [a] corporation that operates in many places can scarcely be at home in all of them." *BNSF*, 342 U.S. at 414 (internal quotations omitted).

For these reasons, Plaintiff has not shown that there is general jurisdiction over Defendant in California.

        (b)    General Jurisdiction Under Alter Ego Theory

Plaintiff also argues that general jurisdiction can be established by imputing Audacy California's contacts to Audacy under an alter ego theory.

A corporate entity may be subject to general jurisdiction on the basis of the contacts of its subsidiary if the subsidiary is shown to be the "alter ego" of the parent company. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). However, the "veil separating affiliated corporations" may be pierced only "in certain limited circumstances." *Ranza*, 793 F.3d at 1071. The mere existence of a relationship between a parent and a subsidiary does not establish personal jurisdiction over the parent on the basis of the subsidiary's minimum contacts. *Transure, Inc. v. Marsh & McLennan, Inc.,* 766 F.2d 1297, 1299 (9th Cir. 1985). "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson,* 538 U.S. 468, 474 (2003). It is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). "The alter ego test is designed to determine whether the parent and subsidiary are 'not really separate entities,' such that one entity's contacts with the forum state can be fairly attributed to the other." *Ranza*, 793 F.3d at 1071 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)).

The alter ego test requires that the "plaintiff 'must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Id.* at 1073 (quoting *Unocal*, 248 F.3d at 926). "The 'unity of interest and ownership' prong of this test requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.' This test envisions pervasive control over the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.' Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.* (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003)). The "unity of interest and ownership" prong is not met where a parent is directly involved in subsidiary decision-making, yet it "observe[s] all of the corporate formalities necessary to maintain corporate separateness." *Id.* (quoting *Unocal*, 248 F.3d at 928).

Plaintiff argues that general jurisdiction can be established through the alter ego theory because "there are party admissions that the operational activities occurring in Los Angeles are performed by Audacy, Inc., not Audacy California LLC" and "an injustice would occur because Audacy, Inc. would avoid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

jurisdiction of this Court when it had numerous day-to-day contacts with California." Dkt. 26 at 18. The "party admissions" to which Plaintiff refers appear to be the LinkedIn profiles and job postings it has submitted. This evidence is insufficient to show that Audacy California is an alter ego of Audacy. Plaintiff has not proffered facts showing that Audacy California is a "mere instrumentality" of Audacy. The sharing of employees, without more, is insufficient to show an alter ego relationship. Further, even if Audacy California's contacts were imputed to Audacy, they would be insufficient to establish general jurisdiction, for the reasons stated above.

For these reasons, Plaintiff has not shown that Audacy is subject to general jurisdiction in California.

        b)     Specific Jurisdiction

            (1)    <u>Legal Standards</u>

Specific jurisdiction may be exercised over a party if the underlying claims arise out of that party's forum-related contacts. *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The Ninth Circuit applies a three-part test to assess whether specific jurisdiction exists:

> (1) the non-resident defendant must . . . purposefully avail[] himself of the privilege of conducting activities in the forum [and] invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and
> (3) the exercise of jurisdiction [over the defendant] must . . . be reasonable.

*See Schwarzenegger*, 374 F.3d at 802. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)). A plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* The burden then shifts to the party contesting jurisdiction to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 371 F.3d at 802.

With respect to the first prong of the specific jurisdiction test, "purposeful direction" is the appropriate test for claims involving "an intentional tortious or 'tort-like' act." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). Purposeful direction is measured by the "effects test" in *Calder v. Jones*, 465 U.S. 783 (1984). Under that test, the plaintiff must show that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

With respect to the first prong of *Calder*, an intentional act is one committed with the "intent to perform an actual, physical act in the real world." *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 806). The second prong of the *Calder* test, "express aiming," requires "something more" than a "foreign act with foreseeable effects in the forum state." *Wash. Shoe v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F. 3d 1064 (9th Cir. 2017). The Supreme Court has "reinforced the traditional understanding that our

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with the resident of the forum." *Picot*, 780 F.3d at 1214.

In *Walden*, a DEA agent questioned, searched, and seized cash from a Nevada resident who had been detained while changing planes at an airport in Georgia. 571 U.S. at 279-80. The Nevada resident brought an action against the DEA agent in the District of Nevada, alleging Fourth Amendment violations. *Id.* at 281. The Supreme Court held that there was no personal jurisdiction over the agent in Nevada:

> [T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.

Id. at 285–86 (internal citations omitted).

Under *Walden*, the touchstone of the specific jurisdiction analysis is the defendant's contacts with the forum, not defendant's knowledge of the plaintiff's presence in that forum. *See Id.* As the Ninth Circuit has explained, "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods*, 874 F.3d at 1070. Thus, the mere "operation of an interactive website does not, by itself, establish express aiming." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). However, "operating a website 'in conjunction with something more—conduct directly targeting the forum—is sufficient' to satisfy the express aiming prong." *Id.* at 1092 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011)). In conducting this analysis, a court is to consider "the interactivity of the defendant's website," "the geographic scope of the defendant's commercial ambitions," and "whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Mavrix*, 647 F.3d at 1229. When a "website itself is the only jurisdictional contact," the "analysis turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Herbal Brands*, 72 F.4th at 1092.

    (2)  <u>Application</u>

      (a)  Purposeful Direction: Intentional Act by Audacy

The parties dispute whether the act of posting the allegedly infringing photos can be attributed to Audacy for purposes of establishing specific jurisdiction. Audacy contends that the allegedly infringing photographs were posted on the social media accounts of local radio stations located in Georgia, Connecticut, Arizona, Texas, New York and Missouri. Motion at 6. Audacy asserts that these radio stations are operated by its indirectly-owned subsidiaries (the "LLCs"), each of which is incorporated in Delaware and has its principal place of business in Pennsylvania. *Id.* at 7. Audacy asserts that the social media posts at issue were made by employees of those LLCs. Dkt. 27 at 8; Dkt. Supp. Dash Decl., Dkt. 28 ¶¶ 8-9. Audacy has produced a chart identifying the individual who posted each allegedly infringing photograph, and the LLC by which they were employed. Dkt. 39-4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

Plaintiff makes several arguments as to why the actions of the employees who posted the photographs may be attributed to Audacy. Plaintiff contends that, although Audacy has presented evidence that those individuals are employees of the subsidiary LLCs and not of Audacy, they may nonetheless be considered employees or agents of Audacy. The basis for this position is that, under Pennsylvania law, "the threshold issue to determine whether an employer-employee relationship exists is the employer's right to control the employees' work," and Audacy has not identified facts showing that the LLCs had control over those individuals. Dkt. 26 at 12; Dkt. 39 at 2-5. Plaintiff also argues that there is "a factual question whether Audacy, Inc. is vicariously and contributorily responsible for the infringing acts of the stations" because Audacy at times provides content to the Local LLCs to post. Supp. Brief at 6-7.

It is unnecessary to determine whether the individuals who posted the allegedly infringing photographs may be considered employees of Audacy, or whether the posts may otherwise be attributed to Audacy. Thus, as explained below, Plaintiff has not met its burden to show that the alleged actions by Audacy's affiliates are sufficient to constitute express aiming, even if those actions were attributed to Audacy.

(b)  Purposeful Direction: Express Aiming

In support of the Motion, Audacy provides the declaration of Michael Dash ("Dash Declaration"), in addition to the Supplemental Dash Declaration. Dash declares that the posts identified in Exhibit B to the Complaint were made by persons who were staff members at the following radio stations or by the following on-air personalities[3]:

- WVEE (103.3 FM), located in Atlanta, Georgia (Instagram; Twitter)
- WZMX (93.7 FM), located in Hartford, Connecticut (Instagram)
- KALV (101.5 FM), located in Phoenix, Arizona (Instagram)
- KLUV (98.7 FM), located in Dallas-Forth Worth, Texas (Twitter)
- WNEW (102.7 FM), located in New York, New York (Twitter)
- Mike Adam, a New York, New York-based on-air personality with WNEW (Twitter)
- WHHL (104.1 FM), located in greater St. Louis, Missouri (Instagram)[4]
- KYKY (98.1 FM), located in greater St. Louis, Missouri (website post)

Dash Decl. ¶ 8; Supp. Dash Decl. ¶ 3.

Each of the allegedly infringing photographs was posted on either an Instagram or Twitter account of the above-listed radio stations and on-air personalities, and in one case, on a website for a radio station. *See* Dkt. 11-3, Ex. B; Dash Decl. ¶ 8. Dash declares that these stations are operated, respectively, by Audacy Georgia, LLC; Audacy Connecticut, LLC; Audacy Arizona, LLC; Audacy Texas,

---

[3] One exception is a post that appeared on the Instagram account of WVEE in Atlanta. The Supplemental Dash Declaration states that Audacy cannot confirm that a staff member at the station posted the photograph because the post was deleted, but it asserts that the person could not have worked for Audacy itself because Audacy had no employees. Supp. Dash Decl. ¶ 3 n.1.

[4] In its Supplemental Response, Audacy states that it has learned that the post by 104.1 was made by the station "before it became an Audacy station; thus, no Audacy-branded entity of any kind had anything to do with this post." Dkt. 40 at 4 n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

LLC; Audacy, New York, LLC; and Audacy Missouri, LLC. Dash Decl. ¶ 9. Dash further declares that the social media accounts on which the photographs were posted "are not intended to purposefully or specifically target users in California," and instead "primarily target listeners in the media markets in which they are based." *Id.* ¶ 11.

Plaintiff argues that Audacy, or its agents, expressly aimed conduct at California by posting the allegedly infringing social media posts. Plaintiff contends that, because it sent Audacy a cease-and-desist letter providing notice of the alleged infringement and of Audacy's location in California, Audacy "individually targeted Backgrid" by continuing to make infringing posts. Dkt. 26 at 12-13. However, as the Ninth Circuit has made clear, under *Walden*, "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017). A plaintiff may not establish express aiming merely by demonstrating a defendant's willful copyright infringement and its knowledge of the plaintiff's connection to the forum state. *Id.* at 1069-70.

Plaintiff also argues that certain evidence obtained from jurisdictional discovery supports a conclusion that the social media accounts of the relevant radio stations target a California audience. For example, Plaintiff identifies evidence that some Instagram followers of the social media accounts at issue are from Southern California. Dkt. 39 at 11; Ardalan Decl., Ex. K. However, the data provided shows that the number of followers of the social media accounts at issue "between 2018 and the present who provided location information self-reporting that they reside in California" constitute 0.4% of the followers of V103 in Atlanta, 0.3% of the followers of Hot 93.7 in Hartford, 0.6% of the followers of Live 101.5 in Phoenix, and 0.2% of the followers of Hot 104.1 in St. Louis. Dkt. 40 at 5; Declaration of Thomas B. Sullivan ("Sullivan Decl."), Dkt. 40-1, Ex. 2; Ardalan Decl., Ex. B, K. According to the data submitted, the significant majority of the followers of each of these Instagram accounts is located in the home state of the station. Ardalan Decl., Ex. K.[5]

That the social media accounts at issue have some followers from California is insufficient to establish express aiming. *See BackGrid USA, Inc. v. Mod. Notoriety Inc.*, No. CV 21-03318-RSWL-PDx, 2021 WL 4772474 (C.D. Cal. Sept. 15, 2021), *appeal dismissed*, No. 21-56104, 2021 WL 6414652 (9th Cir. Nov. 23, 2021) ("[T]he fact that Defendant Castillo's Website and social media accounts have some Southern California consumers and followers is insufficient to show that Defendant Castillo expressly aimed his intentional acts at the Southern California market."); *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020) (that approximately 20% of adult media site's visitors were located in the U.S. was insufficient to show express aiming at the U.S. where website had no "forum-specific focus").

Such evidence of a limited number of California-based followers does not show that these radio stations used their social media accounts "continuously and deliberately [to] exploit[]" the California market. *Mavrix*, 647 F.3d at 1230 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 771 (1984)); *see also Axiom Foods*, 874 F.3d at 1070-71 (no express aiming at California where 10 or fewer of the 343 recipients of a newsletter that was primarily directed at Western Europe were located in California).

---

[5] Audacy states that it is not able to provide the number of followers of each of the Twitter accounts because Twitter does not provide Audacy with location data. Dkt. 40 at 5; Ardalan Decl., Ex. H.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

*Mavrix*, which is cited by the parties, is also instructive. *Mavrix* concluded that purposeful direction was satisfied where the defendant, the operator of a celebrity gossip website, allegedly infringed the copyright of the plaintiff, a celebrity photography agency, by posting on its website celebrity photographs the plaintiff had taken. *Id.* at 1222-23. *Mavrix* concluded that it was "most salient" that the defendant "used Mavrix's copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Id.* at 1229. It determined that the defendant "'continuously and deliberately exploited' the California market for its website" by contracting with third-party advertisers who directly marketed to the California market. *Id.* at 1230 (quoting *Keeton*, 465 U.S. at 771). Because the defendant "operated a very popular website with a specific focus on the California-centered celebrity and entertainment industries," *Mavrix* determined that the defendant "anticipated, desired, and achieved a substantial California viewer base," and this California audience was "an integral component of [defendant's] business model and its profitability." *Id.* at 1230.

*Mavrix* distinguished *Keeton*, where the Supreme Court found purposeful direction was satisfied with respect to a defamation claim in which a magazine located outside of California allegedly targeted California:

> The applicability of Keeton to this case depends on two similarities between celebrity-gossip.net and Hustler magazine. First, both were large publications that sought and attracted nationwide audiences. Both publications could count on reaching consumers in all fifty states. Second, both publications cultivated their nationwide audiences for commercial gain.

*Id. Mavrix* then concluded that express aiming would not necessarily be found if "a local newspaper, an individual, or an unpaid blogger" posted content to "a website accessible in all fifty states, but who could not be as certain as Brand or Hustler that his actions would be so widely observed and who did not seek commercial gain from users outside his locality." *Id.* at 1231.

Here, it has not been shown that the radio stations that made the posts at issue cultivated nationwide audiences, could expect those posts to reach all 50 states, or anticipated and achieved a substantial California audience. Nor has it been shown that these accounts or websites exploited the California market for commercial gain.

Plaintiff asserts that there is evidence that Audacy "contract[s] with California based companies with respect to its contests and promotions," and "its own website targets Southern California residents." Dkt. 39 at 9; Dkt. 39-1, Declaration of Joanna Ardalan in Support of Supplemental Brief ("Ardalan Decl."), Exs. I-J. This evidence shows that a promotion unrelated to the posts at issue appeared on the website of Audacy, Inc. Ex. I. The advertisement for the promotion, which invited consumers to enter a contest whose winner would meet Jordan Davis, states that the promotion is sponsored by Stella Rosa, a company that Plaintiff contends is based in California. Ex. I; Dkt. 39 at 9. Plaintiff also provides evidence that an advertisement including the word "California" appeared on the Audacy, Inc. website. Ex. J. The advertisement is for a meat product with the brand name "Farmer John," and it includes the words "So California." *Id.*

All of these advertisements lack a nexus with the social media posts that form the basis of Plaintiff's claims. They were not posted on the social media accounts of the radio stations that made the allegedly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

infringing posts. Further, there is no evidence that they were otherwise associated with those radio stations or the LLCs that own or operate them. Because there is no nexus to Plaintiffs' claims, this evidence does not support specific jurisdiction. Further, that Audacy has displayed a single advertisement containing the word "California" and a single promotion involving a California-based company is insufficient to establish the cultivation of a California-based audience.

Plaintiff also identifies evidence that Audacy "solicits visitors to sign up for a mailing list," on the Audacy.com website, and, "[w]hen one signs up for the mailing list, Audacy then emails its signee with information about local stations." Dkt. 39 at 10-11; Ardalan Decl., Exs. J, L. Plaintiff argues that this evidence "undermin[es] Audacy's contention that it keeps local markets local." *Id.* at 11. Once again, the mailing list lacks a nexus with the posts that form the basis of Plaintiffs' claims, and it does not support the contention that the posts at issue were purposefully directed at California.

Plaintiff also argues that the photograph of Matthew McConaughey was expressly aimed at California. Plaintiff asserts that this photograph was posted on the Radio.com site -- which has been rebranded to Audacy -- "as an asset for other stations to use." Dkt. 39 at 7. Defendant responds that Keelin Austin, a witness for Audacy, "testified that based on the web browser URL, it was posted on the site for KYKY FM, a St. Louis station." Dkt. 40 at 10 (citing Ardalan Decl., Ex. A at 54-55). Exhibit B to the Complaint contains a screenshot of this photograph and a URL that begins with "https://images.radio.com/kykyfm." Plaintiff argues that because Audacy could not identify the web traffic associated with the photograph, "[t]hese factual disputes must be resolved in Backgrid's favor," and that it should be inferred that there was traffic from California users on these posts. However, even if it were inferred that some users from California viewed this post, there is no evidence that this post was aimed at California, or that any California radio stations used it.

Viewing the available evidence collectively, it is not sufficient to show or imply that the radio stations responsible for the allegedly infringing posts, or their corresponding websites or social media accounts, cultivated a California-specific audience or otherwise targeted California residents. Instead, it supports the view that the social media accounts of the local radio stations target those in the markets where they are based. That Audacy has an Audacy California affiliate, with offices in Southern California, does not change the outcome. Even if it were shown that the contacts of Audacy California could be attributed to Audacy for purposes of personal jurisdiction, there is no evidence that Audacy California's operations were tied to Plaintiff's claims. For the foregoing reasons, Plaintiff has failed to make an adequate showing that Defendant expressly aimed its conduct at California. Because the "purposeful direction" prong of the test for specific jurisdiction has not been satisfied, it is unnecessary to consider the other two elements of the test. Therefore, Audacy is not subject to specific jurisdiction in California.

    B.    Venue

"[V]enue is proper 'in the district in which the defendant . . . resides or may be found.' 28 U.S.C. § 1400(a). This circuit interprets this provision to allow venue in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010).

The venue analysis mirrors the personal jurisdiction analysis. Because Defendant is not subject to personal jurisdiction in California, venue is improper in this District.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

      C.      Whether Further Jurisdictional Discovery Should be Permitted

Jurisdictional discovery is "appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto*, 539 F.3d at 1020 (quoting *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). Such discovery "need not be allowed, however, if the request amounts merely to a 'fishing expedition.'" *Houston v. Bank of Am., N.A.*, No. CV 14-02786 MMM AJWX, 2014 WL 2958216, at *4 (C.D. Cal. June 25, 2014) (quoting *Johnson v. Mitchell*, No. CV S-10-1968, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012). A request for jurisdictional discovery may also be declined where the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto*, 539 F.3d at 1020. "Instead, a party that wants to take jurisdictional discovery must make at least a colorable showing that jurisdiction exists." *Houston*, 2014 WL 2958216, at *5 (internal quotation marks, brackets and citation omitted).

Plaintiff's Supplemental Brief asserts that Audacy failed to produce certain information that Plaintiff requested through discovery. Plaintiff argues that Audacy's failure to produce should result in an adverse inference, and that the production of this information should be compelled as part of the requested jurisdictional discovery.

Plaintiff argues that Audacy refused to produce information regarding contests, promotions, referral sources and sponsored posts on the social media accounts that posted the photographs at issue. Dkt. 39 at 8; Ardalan Decl., Ex. G. (referring to Requests No. 4, 5, 17). Similarly, Plaintiff asserts that Audacy failed to produce certain information regarding Audacy's advertising agreements. Dkt. 39 at 9; Ardalan Decl., Ex. G (referring to Requests No. 6, 7, 10). Plaintiff also contends that Audacy's witness, Jessica Levy, "could not provide any information about a promotion that was ***within*** the Infringing Posts, including who participated in the contest." Dkt. 39 at 8. Plaintiff argues that, because Ms. Levy lacked information about contests posted by the social media accounts at issue and about other issues, the underlying factual questions must be resolved in Plaintiff's favor. *Id.* at 9.

Although factual disputes as to conflicting evidence must be resolved in Plaintiff's favor, Plaintiff has not presented any evidence to support the inferences it proposes. Nor has it clearly identified what inferences should be drawn in its favor. With respect to the promotion that was contained within one of the allegedly infringing posts, it invited listeners to tune in to the Connecticut radio station and text the word of the hour; nothing about this shows that it targeted California residents. Dkt. 11-3 at 10.

With respect to Plaintiff's broader discovery requests as to advertising and promotions, including Plaintiff's request that Audacy provide every agreement it has executed related to advertising in the past four years, Audacy argues that such requests go beyond the scope of discovery that was ordered. Dkt. 40 at 8. Audacy is correct, in part, to the extent that such requests were beyond the scope of the limited discovery that was ordered. Dkt. 40 at 7-8. The Discovery Order stated that the "purpose and scope of this discovery is limited to seeking to determine the following: (1) what person(s) were involved in making and uploading the posts at issue; and (2) whether the posts were purposefully directed at California." Dkt. 36 at 1. The Discovery Order stated that the scope of discovery ordered was consistent with the following topics proposed by Plaintiff in the parties' Joint Report (Dkt. 34):

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08874 JAK (KSx) | Date | August 25, 2023 |
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | |

    l. Web traffic of each of the social media websites.
    m. Audacy's targeting of California residents through, inter alia, promotions, contests, mailing lists, advertisements.
    n. Audacy's targeting of California clients and potential advertisers

Dkt. 36 at 1.

Although the Discovery Order did not limit discovery to promotions and advertisements contained *within* the posts at issue, it proved the purpose for this discovery. Thus it was to be narrow in scope and used to seek evidence that the posts at issue were purposefully directed at California residents. Accordingly, some of the discovery requests to which Audacy objected were relevant to the issues on which discovery was ordered, but were broader than the scope of discovery that was permitted. Further, it has not been shown that it would be useful to order further discovery about Audacy's agreements concerning contests, promotions, and advertising. There is not a sufficient showing that further discovery would be reasonably likely to result in the production of documents or testimony that the social media accounts or websites at issue have posted contests, promotions, or advertisements that target California residents or cultivate a California audience. The only California-related advertisements and promotions by Audacy that Plaintiff has identified, do not have a connection to Plaintiff's claims.

Plaintiff also argues that "Audacy destroyed the traffic information that would indicate how many people visited each of the infringing posts on Instagram." Dkt. 39 at 10. Plaintiff suggests that this should result in an adverse inference. Audacy responds that "Audacy can no longer access the posts at issue because it took them down as soon as Backgrid objected to them." Dkt. 40 at 5. Audacy also asserts that Instagram does not provide location data with respect to people who view specific posts. *Id.* (citing Ardalan Decl., Ex. B at 46:22-47:16). The evidence available does not support an inference or finding that Audacy acted improperly by removing the posts at issue, or otherwise failed to preserve evidence. Moreover, because evidence has been presented that Instagram does not provide location data with respect to people who view specific posts, it is not material if Audacy acted improperly by removing the posts.

Plaintiff also asserts that Audacy "distributes a smart phone application that allows access to its radio stations across the country and the ability to 'follow' those stations." Dkt. 39 at 10. Plaintiff argues that Audacy has refused to provide information about California users of Audacy's smart phone application ("App"). *Id.* Plaintiff does not explain how such information relates to establishing specific jurisdiction over the claims asserted here. Ms. Levy testified that a user could follow a station "for listening purposes on the app," but cannot follow a station's social media through the app, and that social media is "separate and apart from the app." Sullivan Decl., Ex. 2 at 4. Similarly, Plaintiff asserts that Audacy failed to provide information about California residents who have signed up for Audacy's mailing list. *Id.* at 10-11. Plaintiff argues that Audacy should be ordered to produce such information. As discussed above, it has not been shown that the mailing list has any connection with the posts or social media accounts at issue. Therefore, there is not a basis for further discovery on this issue.

Plaintiff also takes issue with Ms. Austin's lack of knowledge as to the state(s) in which the individuals who made the posts reside. Dkt. 39 at 3-4. However, Plaintiff has not shown that ordering discovery on the physical residences of those individuals would be useful. Audacy has provided evidence as to the locations where they are employed, and there is no evidence that any of these individuals resides in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08874 JAK (KSx) | | Date | August 25, 2023 |
|---|---|---|---|---|
| Title | Backgrid USA, Inc. v. Audacy, Inc.. | | | |

California. *See* Ardalan Decl., Ex. A at 15-17. Plaintiff also asserts that Ms. Austin did not have an independent basis for the information she provided about the locations where those individuals were employed, and instead relied on a chart provided by Audacy. *Id.* at 4. However, Ms. Austin testified that counsel, Kristel Tupja, obtained the information in the chart by contacting the social media team and brand managers for each of the individual stations. Ardalan Decl., Ex. A at 17-18; Dkt. 40 at 3. It is not material whether Ms. Austin personally verified this information, "because Rule 30(b)(6) witnesses are entitled to reasonably rely on review of documents and conversations with other corporate employees to educate themselves on subjects of their testimony." Dkt. 40 at 3 (citing *Local Initiative Health Auth. for L.A. Cty. v. OneBeacon Prof'l Ins., Inc.*, 2017 U.S. Dist. LEXIS 160557, at *9-10 (C.D. Cal. July 7, 2017)).

Viewed collectively, the present evidence shows that the social media accounts and website that posted the photographs at issue do not cultivate, target, or obtain commercial gain from a substantial California audience. Rather, it supports the view that the focus is on the individual, local markets for the radio stations. For the foregoing reasons, it has not been shown that there is a basis for ordering further jurisdictional discovery.

**IV.      Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED.** Plaintiff's claims are dismissed for lack of personal jurisdiction. This Order shall be stayed for 30 days following its entry so that Plaintiff may refile the action in a court in which there is personal jurisdiction while this one remains pending.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    TJ